Foster RAWLEY, Plaintiff Below, Appellant,

v.

J.J. WHITE, INC., and, Liberty Mutual Insurance Co., Defendants Below, Appellees.

No. 312, 2006.

Supreme Court of Delaware.

Submitted: Sept. 14, 2006.
Decided: Dec. 15, 2006.
Revised: Dec. 18, 2006.

Walt F. Schmittinger, of Schmittinger and Rodriguez, P.A., Dover, DE, for Appellant.

Eric D. Boyle, of Chrissinger & Baumberger, Wilmington, DE, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the court en Banc.

RIDGELY, Justice:

Appellant, Foster Rawley, is an injured worker receiving workers' compensation benefits. His employer agreed that a surgical procedure upon Rawley's knee was compensable. During the time his employer was seeking documentation to support the amount charged by the hospital for a private room, Rawley demanded payment of the bill and then brought a *Huffman* claim[1] for liquidated damages and attorneys fees pursuant to 19 *Del. C.* 2357.[2] The Superior Court dismissed the complaint as untimely because Rawley had not petitioned the Industrial Accident Board ("IAB") to resolve the disagreement on the charges for medical services under 19 *Del. C.* § 2346.[3] Rawley argues that the Superior Court improperly dismissed his complaint. We find no error by the Superior Court and affirm.

---

1.  *Huffman v. C.C. Oliphant & Son, Inc.*, 432 A.2d 1207 (Del.1981).

2.  19 *Del. C.* § 2357 provides: "If default is made by the employer for 30 days after demand in the payment of any amount due under this chapter, the amount may be recovered in the same manner as claims for wages are collectible."

3.  19 *Del. C.* § 2346 provides:
    If any person charged with the payment of medical and other services and the provider to whom said payment is due fail to reach an agreement in regard to such charges, any interested party may notify the Department of the facts. The Department shall thereupon notice the time and place of hearing sent by certified mail to all parties in interest. The Board shall hear and determine the matter. No party to the proceedings shall have any liability for the payment of charges in excess of the amount deemed reasonable and necessary; provided, that the provider is subject to the jurisdiction of the Board and made a party to the proceedings.

## I.

Rawley sustained a compensable injury while working for Defendant–Appellee J.J. White, Inc. ("White") on April 26, 1999. At the time, White's workers' compensation insurer was Liberty Mutual Insurance Company ("Liberty Mutual"). The parties reached an agreement whereby White and Liberty Mutual paid workers' compensation benefits to Rawley, and Defendants paid various benefits, including medical expenses and compensation for lost wages and permanent disability.

In October 2003, Rawley petitioned the IAB for an order compelling the Defendants to pay for a total knee replacement surgery and lost wages that would result from the procedure. Rawley had the knee surgery on December 10, 2003, before the Industrial Accident Board considered the merits of the petition. On January 5, 2004, apparently without knowing that the surgery had already been performed, the Defendants' counsel informed Rawley that they would pay for the surgery and for the period of disability that would follow.[4] In the same letter, White and Liberty Mutual asked Rawley to cancel the IAB hearing because the sole purpose of the hearing was to seek payment of the procedure. On January 28, 2004, Rawley informed the Defendants that his knee replacement surgery had taken place on December 10, 2003.

The Defendants received a bill from the surgeon on December 15, 2003 in the amount of $6,675.00, and paid that bill in full on January 13, 2004. They received an invoice from the hospital on April 12, 2004, which totaled $33,158.85. Liberty Mutual paid $21,008.60 on May 13, 2004 and requested additional documentation to support the remaining portion of the bill for a private room during Rawley's four-day hospitalization. The hospital sent those documents on October 18, 2004 and Liberty Mutual paid the remainder of the bill the following day. Meanwhile, Rawley sent letters demanding payment of the medical expenses pursuant to *Huffman v. C.C. Oliphant & Son, Inc.*[5] on February 9, 2004 and October 7, 2004.

On March 7, 2005, Rawley filed this action against the Defendants for failing to timely pay Rawley's medical bills as agreed in their January 5, 2004 letter. The Defendants filed an answer. They also filed a third-party complaint against the hospital, alleging that the hospital was negligent in failing to provide timely invoices to the Defendants. Rawley moved to strike the Defendants' third-party complaint. Defendants then filed a Motion to Amend and a Response to the Motion to Strike. During oral argument on these motions, the trial judge realized that he personally knew the claimant and recused himself from the case. A new judge was assigned. That judge sent a letter to the parties instructing them to file supplemental memoranda explaining the applicability of *Correa v. Pennsylvania Mfrs. Ass'n. Ins. Inc.*[6]

After considering the supplemental memoranda, the Superior Court dismissed Rawley's complaint as untimely. Relying on *Correa*, the Superior Court held that *Huffman* was inapplicable to this case because the parties had not agreed that a specific bill would be paid by the Defen-

---

**4.** It is apparent from this letter that the Defendants were unaware that Rawley already had the procedure, as counsel wrote, "[w]ith respect to the disability payments, please advise when your client has the surgery so that we may correctly record when the current partial disability payments should be switched over to total disability."

**5.** 432 A.2d 1207, 1210 (Del.1981).

**6.** 618 F.Supp. 915 (D.Del.1985).

dants, and that, therefore, the failure to pay for the private room was not a denial of Rawley's workers' compensation benefits. The Superior Court found that Rawley's remedy was under 19 *Del. C.* § 2346 rather than a *Huffman* claim under 19 *Del. C.* § 2357.[7]

## II.

We review the Superior Court's dismissal of Rawley's complaint *de novo*.[8] Dismissal of a complaint is warranted only if, accepting the plaintiff's allegations as true, the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[9]

An employer is responsible for paying compensation to an employee where the parties either enter into a voluntary agreement regarding benefits[10] or where the IAB enters an order requiring the employer to pay.[11] Under to 19 *Del. C.* § 2347,[12] an employer may not unilaterally terminate workers' compensation benefits, regardless of any good faith belief that the claimant is no longer entitled to such benefits, without an order from the IAB.[13] If an employer does terminate benefits unilaterally, the employee is entitled to seek relief under 19 *Del. C.* § 2357,[14]

---

7. *Rawley v. J.J. White, Inc.*, 2006 WL 1680030 at *3, 2006 Del Super. Lexis 254 at *10 (Del. Super.Ct. May 18, 2006).

8. *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 406 (Del.1995).

9. *Id.* (citing *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del.1982)).

10. While voluntary agreements to pay benefits should be filed and subsequently approved by the board, failure by the employer to submit such an agreement to the board does not affect the finality of such an agreement. *Seserko v. Milford School Dist.*, 1992 WL 19941, at *2 (Del.Super.) ("For purposes of applying the principles in *Huffman*, the Court finds no meaningful distinction between an agreement approved by the Board pursuant to § 2344 and a valid, private agreement for which the employer sought no Board approval."); *see also Starun v. All Am. Eng'g, Co.*, 350 A.2d 765, 768 (Del.1975) (holding that an insurer may not capitalize on the fact that it failed to submit an agreement for compensation to the board).

11. 19 *Del. C.* § 2349 ("An award of the Board, in the absence of fraud, shall be final and conclusive between the parties . . . unless within 30 days of the day the notice of the award was mailed to the parties either party appeals. . . .").

12. 19 *Del. C.* § 2347 provides, in pertinent part:

On the application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred or that the status of the dependent has changed, the Board may at any time, but not oftener than once in 6 months, review any agreement or award.
On such review, the Board may make an award ending, diminishing, increasing or renewing the compensation previously agreed upon or awarded, and designating the persons entitled thereto, subject to this chapter, and shall state its conclusions of facts and rulings of law. The Department shall immediately send to the parties a copy of the award by personal delivery or by certified mail.
* * *
Compensation payable to an employee, under this chapter, shall not terminate until and unless the Board enters an award ending the payment of compensation after a hearing upon review of an agreement or award, provided that no petition for review, hearing or an order by the Board shall be necessary to terminate compensation where the parties to an award or an agreement consent to the termination.

13. *Huffman*, 432 A.2d at 1210.

14. "If default is made by the employer for 30 days after demand in the payment of any amount due under this chapter, the amount may be recovered in the same manner as claims for wages are collectible." 19 *Del. C.* § 2357. *See also Huffman*, 432 A.2d at 1210.

which includes the unpaid amount, liquidated damages and attorneys fees.[15]

In *Correa*, the U.S. District Court for the District of Delaware considered whether an employer's failure to pay medical bills, as opposed to fixed benefits, could give rise to a *Huffman* claim.[16] Applying Delaware law, the District Court found that absent an agreement to pay a specific medical bill or an IAB order to do the same, disputed medical bills must be first resolved under to 19 *Del. C.* § 2346 before a *Huffman* claim is appropriate.[17] Thus, if an employer disputes a medical bill, the claimant should file a petition with the IAB to compel such payment.[18] The Superior Court decided that the same rationale used by the District Court in *Correa* was appropriate in this case and that Rawley's complaint was untimely. We agree.

A mechanism for resolving disputes related to the reasonableness of specific medical expenses is addressed in § 2346. That section provides that any interested party may notify the IAB if there is a dispute as to the payment of medical services. Thus, if an employer or its insurance carrier disputes a specific medical expense, the claimant's remedy is before the IAB. The employer or insurance carrier may also petition the IAB for a resolution of the disagreement. If the IAB determines that the disputed bill is "reasonable and necessary," then it will order that the disputed amount be paid.

If an employer or insurance carrier fails to make the necessary payment after such an order to pay the bill is entered, the claimant may then avail himself of the remedies of § 2357 under *Huffman*. However, it is premature to allow the claimant to collect liquidated damages for failure to pay a disputed medical bill when that dispute is subject to resolution under § 2346. The Workers' Compensation Act contemplates that an employer will have the opportunity to verify the reasonableness of charges related to medical services.[19] The Act further provides that the resolution of a dispute on the reasonableness of a charge for medical services shall be before the Industrial Accident Board.

Our holding that Rawley's complaint was premature balances the employer's right to dispute bills that are incorrect or unreasonable against the claimant's right to seek damages under § 2357 for "any amounts due under this chapter."[20] This rule does not prevent the claimant from seeking *Huffman* damages when the employer wrongfully fails to pay a *specific* charge for medical or other services that it has reviewed and agreed to pay or for which the IAB has ordered payment. In either circumstance, there is no further remedy before the IAB and § 2357 applies.

Rawley cites *National Union Fire Ins. Co. v. McDougall*,[21] for the proposition that liquidated damages under § 2357 are

---

15. *Huffman*, 432 A.2d at 1210–1211.

16. *Correa*, 618 F.Supp. at 919–922

17. *Id.* at 921.

18. *Id.*

19. The General Assembly has contemplated that this time may be needed. 19 *Del. C.* § 2363(b) provides that "[a]ll medical expenses shall be paid within 30 days after bills and documentation for said expenses are received by the employer or its insurance carrier for payment, unless the carrier or self-insured employer notifies claimant or his or her attorney in writing that said expenses are contested or that further verification is required."

20. 19 *Del. C.* § 2357.

21. 773 A.2d 388 (Del.2001).

appropriate when an employer fails to pay outstanding medical bills. He asserts that he is entitled to the same remedy afforded to the claimant in that case. The procedural posture of *McDougall* was factually different from the case before us, however. In *McDougall*, the employer failed to pay an award of actual medical expenses *after* the IAB had ordered such payment. Here, no specific dollar amount of payment was either ordered or agreed upon.

Rawley also argues that the facts of his case are distinguishable from those in *Correa*. Specifically, he claims that the parties in this case had agreed to a specific medical bill, as opposed to agreeing generally that the employer will pay all medical bills. The record does not support his argument. White and Liberty Mutual agreed that Rawley's knee surgery was compensable before receiving a bill. That is not the same as an agreement to pay a *specific* medical charge with knowledge of the actual charge. Nor was it an agreement to pay an unreasonable charge. The General Assembly has expressly anticipated that there may be disputes over the reasonableness of medical charges and it has created a process for the IAB to resolve such disputes in § 2346. A general agreement to pay for the expenses of a medical procedure does not preclude the employer from verifying a charge or disputing the reasonableness of the charge eventually submitted. Because the remedy available before the IAB was not exhausted in this case, we find no error by the Superior Court in dismissing Rawley's complaint as untimely.

## III.

The judgment of the Superior Court is **AFFIRMED.**