Jeffrey D. SCOTT, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 342, 2009.

Supreme Court of Delaware.

Submitted: Sept. 8, 2010.
Decided: Oct. 29, 2010.
Modified: Dec. 6, 2010.

**8.** *Mead Johnson & Co. v. Abbott Laboratories,* 201 F.3d at 888.

472

Jeffrey D. Scott, Georgetown, Delaware; pro se Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

JACOBS, Justice:

Jeffrey D. Scott ("Scott"), the defendant below, appeals from a Superior Court order denying his motion for post-conviction relief. Scott was convicted of second-degree (felony) murder as a lesser-included offense of first-degree murder, one count of possession of a deadly weapon during the commission of a felony ("PDWDCF"), and one count of endangering the welfare of a child. Scott claims that his trial and appellate counsel were ineffective. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2006, Scott and his girlfriend, Edna Crown,[1] had an argument in their apartment concerning Edna's alleged affair with her nephew. Also present in the apartment were Edna's seventeen-year-old daughter, Doris, and Kelly Oster and Oster's two children, Ellen and Ester (ages five and three, respectively). During the argument, Scott pushed Edna down the apartment's front steps. After Edna returned to the apartment, Scott stabbed her eleven times with a kitchen knife. Edna died as a result of her injuries. Kelly and Ester Oster were also injured during the incident.[2]

When the police arrived at the crime scene, Scott admitted to the police that he had stabbed Edna. He later made a similar statement while receiving treatment at the hospital for injuries he sustained during the incident. During a subsequent police interview, Scott made additional incriminating statements, and while leaving the courthouse after a hearing, Scott also made further incriminating statements that were overheard by police officers.

Scott was charged with first-degree murder,[3] two counts of assault in the second-degree,[4] three counts of PDWDCF,[5] and three counts of endangering the welfare of a child.[6] At trial, his counsel presented a defense of extreme emotional distress, and introduced expert witness testimony in support thereof. A jury convicted Scott of second-degree murder,[7]

1. Because minor victims are involved, the Court, *sua sponte*, has assigned pseudonyms to the parties under Del. Sup.Ct. R. 7(d).

2. A more detailed statement of the facts is set forth in this Court's opinion affirming Scott's convictions on direct appeal. *Scott v. State*, 919 A.2d 562 (Table), 2007 WL 539650, at *1 (Del.2007).

3. 11 *Del. C.* § 636.

4. 11 *Del. C.* § 612.

5. 11 *Del. C.* § 1447.

6. 11 *Del. C.* § 1102.

7. 11 *Del. C.* § 635. The second-degree murder conviction was a lesser-included offense of first-degree murder.

one count of PDWDCF, and one count of endangering the welfare of a child, but found him not guilty of the other charges. Scott directly appealed his convictions to this Court, which affirmed them.[8]

Scott then moved the Superior Court for post-conviction relief, under Superior Court Criminal Rule 61, advancing eleven arguments as to why his trial and appellate counsel were ineffective.[9] The Superior Court referred Scott's post-conviction motion to a Commissioner for proposed findings and recommendations. The Commissioner recommended, in his report, that Scott's post-conviction motion be denied as without merit and as procedurally barred.[10] The Superior Court adopted the Commissioner's report and recommendations and denied Scott's motion for post-conviction relief.[11] Scott then appealed to this Court.

On appeal, Scott raised a new ineffective assistance claim based on this Court's recent opinion in *Cooke v. State.*[12] The State responded that because this claim was not raised in the trial court, the record was inadequate for appellate review. On May 4, 2010, this Court remanded Scott's appeal to the Superior Court for consideration of Scott's claim based on *Cooke.*[13] On remand, the Superior Court held that Scott's *Cooke*-related claims were without merit and denied his motion.[14] This appeal followed.

## ANALYSIS

■■■ This Court reviews a trial court's denial of a motion for post-conviction relief based on ineffective assistance of counsel for abuse of discretion.[15] Questions of law are reviewed *de novo,*[16] while questions of fact are reviewed under a "clearly erroneous" standard.[17]

■■■ To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient, *i.e.*, that counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance caused the defendant actual prejudice.[18] Counsel's performance enjoys

8. Scott presented two arguments on direct appeal: first, that there were no exigent circumstances to justify the issuance of a nighttime search warrant; and second, that the restriction on cross-examination of April Stinson, a State witness, was an abuse of discretion. *Scott v. State*, 919 A.2d 562 (Table), 2007 WL 539650, at *2 (Del.2007).

9. Appellant's Motion for Post–Conviction Relief (May 17, 2007).

10. Comm'r Rep. and Recommendations at 15 (Apr. 16, 2008) (hereinafter "Comm'r Rep.").

11. Super. Ct. Order (May 29, 2009).

12. 977 A.2d 803 (Del.2009).

13. Sup.Ct. Order (May 4, 2010).

14. Super. Ct. Rep. on Remand at ¶ 8 (Jul. 20, 2010).

15. *Capano v. State*, 889 A.2d 968, 974–75 (Del.2006) (describing the standard of review for denial of post-conviction relief motion); *Outten v. State*, 720 A.2d 547, 551 (Del.1998) (same).

16. *Capano*, 889 A.2d at 974; *Outten*, 720 A.2d at 551.

17. *Jackson v. State*, 990 A.2d 1281, 1288 (Del. 2009) ("We will uphold the trial court's factual findings unless they are not supported by sufficient evidence and are clearly erroneous."); *Ramon v. Ramon*, 963 A.2d 128, 132 (Del.2008) ("We will not disturb findings of fact unless they are clearly wrong and justice requires that those facts be overturned.").

18. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (establishing the two-prong test for ineffective assistance of counsel).

a strong presumption of reasonableness.[19] To succeed on the prejudice prong, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[20] That test requires that the defendant make specific and concrete allegations of actual prejudice and substantiate them.[21]

None of Scott's claims meets the required showing for either of the *Strickland* prongs.[22] Scott makes conclusory assertions that his defense counsel acted unreasonably, but provides no support for those assertions, or explains why his counsel's performance was deficient. Nor does Scott explain how he was prejudiced by his counsel's alleged deficiencies. This Court has previously held that failure to articulate, with particularity, the nature of the claimed prejudice is fatal to a claim of ineffective assistance of counsel.[23] Accordingly, the Superior Court properly denied Scott's motion for post-conviction relief.

## I. *Scott's Ineffective Assistance of Counsel Claims*

On appeal, Scott raises twelve claims of ineffective assistance of counsel.[24] Each of these claims is addressed below.

### A. *Scott's First Claim*

■ Scott first claims that his trial counsel was ineffective for not objecting to the admission of Kelly and Ester Oster's medical records documenting their injuries and treatment, when neither witness testified at trial. Although the jury found Scott not guilty of the assault charges involving Kelly and Ester Oster, Scott argues that his counsel's failure to object prejudiced him, because the medical records "contradicted" his defense of extreme emotional distress. That contradiction, Scott contends, caused the jury to convict him of having a reckless disregard for human life, i.e., second-degree murder.[25]

Scott's claim fails for two reasons. First, the trial court properly admitted Kelly and Ester Oster's medical records into evidence as hearsay exceptions under Delaware Uniform Rules of Evidence ("DRE") 803(4) and 803(6).[26] Therefore, Scott's counsel would not have successfully prevented the admission of these documents, regardless of whether the Osters testified. Moreover, Scott was acquitted of the two assault charges involving Kelly

19. *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990); *see also Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("*Strickland's* standard, although by no means insurmountable, is highly demanding.").

20. *Flamer*, 585 A.2d at 753.

21. *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice and substantiate them.").

22. A court deciding an ineffective assistance of counsel claim is not required to address both the performance and prejudice components of the inquiry if the defendant's showing on either prong is insufficient. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

23. *See, e.g., Wright*, 671 A.2d at 1356; *Younger v. State*, 580 A.2d 552, 555–56 (Del.1990).

24. In his brief, Scott numbered his twelve claims as "A–L." Those letters designations correspond to the numbered designations used here.

25. Scott's "contradiction" argument is not entirely clear; a best-guess reading is that Scott believes that his counsel's failure to object to the admission of the medical records gave the jury the impression that his counsel believed that Scott was, in fact, acting recklessly and not emotionally.

26. DEL. UNIF. R. EVID. 803(4) (statements made for purposes of medical treatment); DEL. UNIF. R. EVID. 803(6) (business records exception).

and Ester Oster. His second-degree murder conviction rests on a totally separate basis—the injuries he inflicted on Edna Crown, resulting in her death. Because Scott cannot show actual prejudice, the trial court did not err or abuse its discretion by denying Scott's claim.

## B. *Scott's Second Claim*

■ Next, Scott claims that the police obtained a nighttime search warrant based on a false police affidavit, and that his counsel was ineffective for not moving to suppress the evidence seized as a result of the defective warrant. Specifically, Scott claims that the police knew that Kelly Oster did not reside at the searched apartment, even though the police affidavit stated otherwise.[27]

■ This claim cannot succeed either. Under *Franks v. Delaware,* suppression is an appropriate remedy only if the false statement was included in the affidavit knowingly and intentionally or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause.[28] Here, the Superior Court accepted the Commissioner's conclusion that the search warrant established probable cause regardless of whether Kelly Oster was a resident. Scott has not shown that the affidavit misstatement regarding Oster's residency was necessary to the finding of probable cause.

Equally important, Scott's counsel did, in fact, move to suppress the evidence based on a lack of exigent circumstances for a nighttime search warrant. The trial court denied counsel's motion, and this Court affirmed on direct appeal.[29] Because Scott cannot succeed on either the deficient performance or the actual prejudice component of his ineffective assistance of counsel claim, the trial court did not err or abuse its discretion by denying that claim.

## C. *Scott's Third Claim*

■ Scott next claims that his counsel was ineffective for not moving to suppress his statements to the police when they handcuffed him. He urges that the statements would have been suppressed because he was neither told that he was under arrest nor advised of his *Miranda* rights.

■ This claim also lacks merit. *Miranda* warnings are required when a defendant is subject to custodial interrogation.[30] Scott, however, made his statements voluntarily and spontaneously as he was being taken into custody by the police.[31] Because there was no interrogation by the police, *Miranda* is inapplicable. Scott's counsel, therefore, did not perform deficiently by not moving to suppress Scott's spontaneous statements,

---

27. According to Scott, the nighttime search warrant affidavit stated that there were "exigent circumstances that Kelly Oster lived at the residence and may return to the residence to obtain items from the home." Scott has not included a copy of the affidavit in his submissions, but the search warrant does recite Kelly Oster as residing at the apartment.

28. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

29. *Scott v. State,* 919 A.2d 562 (Table), 2007 WL 539650, at *1–2 (Del.2007).

30. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also California v. Hodari D.,* 499 U.S. 621, 626–27, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (explaining the "custody" requirement); *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (explaining the "interrogation" requirement).

31. Scott admits that he made the statements because he "believed [they] would save his life."

478

and the trial court did not err or abuse its discretion by denying Scott's third claim.

## D. Scott's Fourth Claim

■ Scott's fourth claim is that his counsel was ineffective for failing to insist on a *voir dire* examination of a juror after the juror informed the court that she was taking pain medication. Scott argues that because most prescription pain relievers contain narcotics, the juror was impaired and preoccupied with her pain during the trial and, therefore, could not be fair and impartial.

This claim also fails. The juror was questioned about her medical issue, and told the trial judge that it would not interfere with performing her duty as a juror.[32] The judge, defense counsel, and counsel for the State were sufficiently satisfied to allow the juror to continue to serve. Because Scott's contention that his counsel performed deficiently or that he was actually prejudiced lacks merit, the trial court did not err or abuse its discretion by denying Scott's claim.

## E. Scott's Fifth Claim

■ Scott's fifth claim is that counsel's performance was ineffective for failing to move to suppress all of Scott's statements to the police on the ground that, due to his history of intoxication and drug use, he was unable to understand the *Miranda* warnings given to him.

As discussed above, Scott's statements to the police at the time of his arrest were voluntary and spontaneous, and not a result of police interrogation. Therefore, *Miranda* does not apply to these state-ments. Nor can Scott argue that, because of his prior drug and alcohol use, he was incapable of understanding the *Miranda* warnings given to him during a later taped interview with the police, because he did invoke his right to remain silent and the trial court granted defense counsel's motion to suppress those taped interview statements. Scott's counsel did not perform deficiently, and the trial court did not err or abuse its discretion by rejecting this claim.

## F. Scott's Sixth Claim

■ Scott's sixth claim is that both his trial and appellate counsel erred by failing to object to the admission of his statements to the emergency medical technician ("EMT"), on the ground that those statements were inadmissible hearsay.

Scott's counsel did not err, because under DRE 801(d)(2), those statements were not hearsay. Rather, they were admissions by Scott,[33] for which reason Scott's trial and appellate counsel had no basis to object to their admission into evidence. Because Scott cannot succeed either on his claim that his counsel performed deficiently or that he suffered prejudice, the trial court did not err or abuse its discretion in rejecting that claim.

## G. Scott's Seventh Claim

■ Next, Scott argues that his appellate counsel was ineffective for not appealing the trial judge's ruling that limited scope of the cross-examination of the State's psychiatric expert witness, Dr. Weiss, who testified adversely to Scott's

32. The juror had a tooth extracted the previous day and was taking pain medication.

33. Del. Unif. R. Evid. 801(d)(2) ("A statement is not hearsay if ... [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity").

defense of extreme emotional distress.[34] Scott contends that his counsel should have been allowed to cross-examine Dr. Weiss about testimony Dr. Weiss gave in a previous (unrelated) Pennsylvania case. In that case, Dr. Weiss testified that an accurate psychiatric evaluation can be made only if there is a trusting relationship between the therapist and the patient. Scott argues that because he and Dr. Weiss did not have a "trusting relationship," Dr. Weiss could not have evaluated him accurately, and counsel should have been allowed to develop that fact in cross-examination.

Scott's counsel did not err by not raising this argument on appeal. In *Jones v. Barnes*, the United States Supreme Court held that although a defendant has the final authority to make certain fundamental decisions such as whether to plead guilty or to take an appeal, the defendant does *not* have a constitutional right to compel his counsel to raise issues that counsel, in exercising his own independent and professional strategic judgment, decides not to present.[35] Scott's counsel stated in his affidavit that he "did not argue this issue because [he] did not believe that there was any chance that [this Court] would reverse based on the circumstances of the ruling." Moreover, Scott's trial counsel did, in fact, cross-examine Dr.

Weiss on the underlying issue of whether an accurate evaluation required a patient to trust the psychiatrist. Dr. Weiss' response was that in Scott's case, that trust was not required.

Scott's appellate counsel did not perform deficiently by choosing not to raise this particular argument on direct appeal, nor has Scott demonstrated actual prejudice. The trial court did not err or abuse its discretion by denying Scott's claim.

### H. *Scott's Eighth Claim*

 Scott's eighth claim is that his trial counsel was ineffective for failing to raise a hearsay objection to a police officer's testimony about statements he overheard Scott make while leaving the courthouse.

Scott's eighth claim fails for the same reason as his sixth. Under DRE 801(d)(2), Scott's statements are treated as a party admission, and are not hearsay.[36] Because there was no basis for raising a hearsay objection, Scott's counsel did not perform deficiently by not objecting. The trial court neither erred nor abused its discretion in denying this claim.

### I. *Scott's Ninth Claim*

 Scott next contends that his trial counsel was ineffective for failing to object

---

34. The Commissioner did not address this particular argument in his April 16, 2008 report. *See* Comm'r's Rep. at 5, 12. Although the Superior Court conducted a *de novo* review of Scott's claims, it also did not explicitly address this argument in its order adopting the Commissioner's findings. Super. Ct. Order at ¶ 5(a) (May 29, 2009).

35. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("It is also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal ... [but no]

decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *see also Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985) (noting that "the attorney need not advance *every* argument, regardless of merit, urged by the appellant").

36. DEL. UNIF. R. EVID. 801(d)(2).

to the prosecution's closing statement in which the prosecution inappropriately bolstered its witnesses' credibility by using facts that were "not based upon evidence presented at trial." Scott also argues that his appellate counsel was ineffective for failing to raise this alleged "prosecutorial misconduct" on direct appeal.

This claim cannot succeed for two reasons. First, Scott made only general allegations of prosecutorial misconduct. Merely including excerpts of the trial transcript, without more, does not identify with particularity the specific portion(s) of the State's closing argument that allegedly contain "facts that were not based upon evidence presented at trial." That imprecision made it impossible for the trial court to assess the merits of this claim.[37] Moreover, a review of the excerpted trial transcript discloses nothing objectionable. In the prosecution's closing argument, the prosecutor merely summarized each witness' testimony.

Even assuming *arguendo* that the prosecutor's closing argument was improper, Scott has not identified any resulting prejudice that he suffered.[38] The trial court did not err or abuse its discretion in denying this claim.

## J. Scott's Tenth Claim

 Scott's tenth claim is that his appellate counsel was ineffective by failing to raise all of the arguments Scott wished to have presented. As support, Scott makes general and conclusory allegations that his counsel did not discuss the appeal with

him, but fails to identify any specific point that his counsel should have raised on appeal.

Scott's claim cannot succeed for the reasons discussed in connection with his seventh claim. Under *Jones* and *Evitts*, counsel need not advance every argument the defendant wishes to raise, regardless of merit.[39] Scott's counsel did not act unreasonably by exercising his professional judgment in deciding what issues to raise on direct appeal. Furthermore (and contrary to Scott's assertion), Scott's counsel did, in fact, discuss with Scott the arguments that Scott wanted to have presented, and explained why he (counsel) would not make those arguments. Because Scott cannot succeed on his ineffective assistance of counsel claim, the trial court did not err or abuse its discretion in rejecting that claim.

## K. Scott's Eleventh Claim

 Scott's penultimate claim is that his appellate counsel was ineffective for failing to appeal the trial court's denial of his Motion for Judgment of Acquittal. Scott contends that the State's evidence relating to Kelly and Ester Oster's injuries so overwhelmed the jury that it could not properly consider his defense of extreme emotional distress, thereby prejudicing him. Essentially, Scott argues that the trial court erred in admitting the medical and police reports relating to Kelly and Ester Oster's injuries.

Scott's claim fails for several reasons. First, as noted in our discussion of Scott's

---

**37.** As Scott's appellate counsel testified in his affidavit, "Mr. Scott does not identify or describe any specific statements of the prosecutor in his closing argument so I don't know how to respond to these claims."

**38.** *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (holding that "mere allegations" of counsel's ineffectiveness is not enough to suc-

ceed in an ineffective assistance of counsel claim; defendant must make "specific allegations of actual prejudice and substantiate them").

**39.** *Evitts*, 469 U.S. at 394, 105 S.Ct. 830; *Jones*, 463 U.S. at 751, 103 S.Ct. 3308.

first claim, the jury acquitted Scott of both the first-degree murder charge and the two assault charges. Therefore, Scott cannot argue that he was actually prejudiced by the evidence of the Osters' injuries, because he was acquitted of those charges. Second, the evidence is sufficient to support the jury's verdict of second-degree murder. In appellate counsel's own words, the evidence "uncontroverted[ly] and overwhelming[ly]" demonstrates that "Scott attacked Edna Crown and stabbed her to death." Scott cannot show that he was actually prejudiced by the admission of the evidence relating to the Osters' injuries. Third, Scott's trial counsel did, in fact, move to reduce the first-degree murder charge to second-degree murder on the basis of insufficient evidence of intent. Because his trial counsel succeeded on his motion for acquittal of first-degree murder, it is unclear what exactly Scott desired his counsel to argue on direct appeal.

Having been acquitted of the first-degree murder charge and two assault charges, Scott has failed to demonstrate that his appellate counsel performed deficiently, or that he suffered any actual prejudice from counsel's performance. The trial court did not err or abuse its discretion in denying Scott's ineffective assistance claim.

### L. *Scott's Twelfth Claim*

■ Scott's final claim is that his appellate counsel was ineffective for failing to argue on appeal that his trial counsel should have been discharged. Scott alleges that his Motion to Disqualify Counsel should have been granted, because trial counsel declined to raise arguments that he wished him to present.[40]

This claim, too, must fail. As discussed in connection with Scott's seventh and tenth claims, counsel is not required to raise every issue that the defendant wishes to present, regardless of merit.[41] Defense counsel is afforded wide latitude to make decisions concerning legal arguments and strategy.[42] Scott was unwilling to waive his right to counsel and represent himself. Counsel's decision to omit this particular argument on direct appeal cannot give rise to an ineffective assistance claim, because Scott has not demonstrated that that decision fell below an objective standard of reasonableness.[43] The trial court did not err or abuse its discretion in rejecting this claim.

### II. *Scott's Ineffective Assistance of Counsel Claim Based on Cooke v. State*

On this appeal, Scott has raised a new claim of ineffective counsel based on this Court's recent opinion in *Cooke v. State*.[44] Scott contends that he had requested his counsel to raise the defense of not guilty by reason of insanity, but counsel did not follow his instructions. Instead, Scott as-

---

40. In his motion, Scott listed three reasons for disqualifying his trial counsel: (1) that counsel had only given him half of the discovery evidence, (2) that counsel was not giving him any idea of her preparation for trial; and (3) that counsel would only talk to him about the penalty phase.

41. *Evitts*, 469 U.S. at 394, 105 S.Ct. 830; *Jones*, 463 U.S. at 751, 103 S.Ct. 3308.

42. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

(noting that "judicial scrutiny of counsel's performance must be highly deferential").

43. *See id.* at 687–88, 104 S.Ct. 2052 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.").

44. 977 A.2d 803 (Del.2009).

serts, counsel decided to raise the defense of extreme emotional distress, even though the record supported a claim that he suffered from mental illness.

Scott's reliance on *Cooke* is misguided. *Cooke* is inapplicable because the factual premise giving rise to counsel's infringement of constitutional rights in *Cooke* is absent here. Moreover, even were we to construe *Cooke* broadly—to hold that a defendant's Sixth and Fourteenth Amendment rights are violated whenever counsel refuses to present a defense the defendant demands—Scott has not shown that he actually demanded that his counsel present the specific defense of not guilty by reason of insanity.

### A. *Cooke is Inapplicable*

First, *Cooke* is inapplicable. In *Cooke*, this Court held that when a defense counsel's strategy infringes a defendant's constitutional right to make fundamental decisions regarding his case such as whether to plead guilty or testify on his own behalf, that conduct undermines the proper functioning of the adversarial process under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.[45] In that case, Cooke's counsel pursued a "guilty but mentally ill" defense over Cooke's "vociferous and repeated protestations that he was completely innocent and not mentally ill."[46] Cooke's counsel also refused to allow Cooke to testify on his own behalf because counsel thought Cooke would assert his innocence, thereby undermining counsel's position that Cooke had, in fact, committed the homicide.[47] Finally, Cooke's trial counsel had compromised the jury's impartiality by stating in their opening argument—against Cooke's

wishes—that Cooke was guilty but mentally ill.[48]

None of these circumstances is present here. Scott has not claimed that his counsel admitted guilt in violation of his express wishes. Scott never denied killing Edna Crown. Nor has Scott contested his counsel's statements or asserted his innocence in his pleadings. Here, in contrast to *Cooke*, guilt is not a contested issue. Scott has not claimed that his counsel refused to let him testify on his own behalf, or compromised the impartiality of the jury by asserting his guilt when he (Scott) maintained his innocence. Therefore, the concerns underlying the infringement and undermining of a defendant's constitutional rights in *Cooke* are not implicated in Scott's case.

### B. *Scott Did Not Make The Requisite "Demand."*

■ Even were we to hold that *Cooke* is applicable, Scott's claim cannot succeed because he did not actually demand that his counsel raise the defense of not guilty by reason of insanity. Scott's claim—that he was "deceived" by his trial counsel because counsel raised the defense of extreme emotional distress rather than not guilty by reason of insanity—was not presented to the trial court in Scott's original Rule 61 motion for post-conviction relief. Nowhere does Scott's original motion make any reference to his current claim that he wanted his counsel to pursue a defense of not guilty by reason of insanity. The first mention of the insanity defense as a basis for Scott's ineffective assistance of counsel claim appears in his November 2009 Opening Brief on appeal from the

---

45. *Id.* at 809.

46. *Id.* at 842.

47. *Id.* at 843–44.

48. *Id.* at 845–46.

trial court's denial of his motion for post-conviction relief.

After the case was remanded to the trial court to consider Scott's new claim, Scott's trial counsel filed an affidavit testifying that Scott "never demanded that we raise the defense of not guilty by reason of insanity." Scott never responded to counsel's affidavit.[49] The trial court considered the uncontroverted evidence actually presented, and ruled that Scott's *Cooke* claim was without merit.[50]

Clearly, the trial court credited counsel's affidavit, but discredited Scott's assertions that he had previously "demanded" that his counsel present a defense of not guilty by reason of insanity. Nothing in the record suggests that the trial court's factual finding was "clearly erroneous."[51] Even if we were to hold that a defendant's

49. Super. Ct. Rep. on Remand at ¶ 7.

50. *Id.* at ¶ 8.

51. *Jackson v. State*, 990 A.2d 1281, 1288 (Del. 2009) ("We will uphold the trial court's factual findings unless they are not supported by

Sixth and Fourteenth Amendment rights are violated whenever counsel refuses to present a defense the defendant demands (which we do not), Scott has not shown that he actually demanded that his counsel present the specific defense of not guilty by reason of insanity. Therefore, the trial court did not err or abuse its discretion in denying Scott's claim under *Cooke*.

## CONCLUSION

The judgment of the Superior Court is affirmed.

sufficient evidence and are clearly erroneous."); *Ramon v. Ramon,* 963 A.2d 128, 132 (Del.2008) ("We will not disturb findings of fact unless they are clearly wrong and justice requires that those facts be overturned.").